UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JESSIE ANN ACKROYD                                              **DECISION**
                Plaintiff,                                **and**
      v.                                                       **ORDER**

ANDREW M. SAUL,[1] Commissioner of                              **18-CV-00434F**
Social Security,                                                (**consent**)

                Defendant.
_____

APPEARANCES:            LAW OFFICES OF KENNETH R. HILLER, PLLC
                               Attorneys for Plaintiff
                               AMY C. CHAMBERS, Esq., of Counsel
                               6000 North Bailey Avenue
                               Suite 1A
                               Amherst, New York 14226

                               JAMES P. KENNEDY, JR.
                               UNITED STATES ATTORNEY
                               MEGHAN J. McEVOY, of Counsel
                               Attorney for Defendant
                               Federal Centre
                               138 Delaware Avenue
                               Buffalo, New York 14202
                                      and
                               LAUREN ELIZABETH MEYERS
                               Special Assistant United States Attorney, of Counsel
                               ELLEN E. SOVERN
                               Acting Regional Chief Counsel, Region II
                               United States Attorney's Office
                               c/o Social Security Administration
                               Office of General Counsel
                               1961 Stout Street, Suite 4169
                               Denver, CO 80294-4003

---

[1]Andrew M. Saul became the Commissioner of the Social Security Administration on June 17, 2019, and pursuant to Rule 25(d) of the Federal Rules of Civil Procedure is automatically substituted as the defendant in this suit with no further action required to continue the action.

## JURISDICTION

On July 9, 2019, this matter was reassigned to the undersigned before whom the parties to this action consented pursuant to 28 U.S.C. § 636(c) to proceed in accordance with this court's June 29, 2018 Standing Order (Dkt. No. 14). The court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). The matter is presently before the court on motions for judgment on the pleadings filed by Plaintiff on November 19, 2018 (Dkt. No. 10), and on January 29, 2019 by Defendant (Dkt. No. 12).

## BACKGROUND

Plaintiff Jessie Ann Ackroyd ("Plaintiff"), brings this action under the Social Security Act ("the Act"), 42 U.S.C. § 405(g), seeking judicial review of the Commissioner of Social Security's final decision denying Plaintiff's application filed on June 25, 2014, with the Social Security Administration ("SSA"), for Social Security Disability Insurance under Title II of the Act ("SSI"), and Supplemental Security Income under Title XVI of the Act ("disability benefits"). Plaintiff alleges that she became disabled on December 30, 2010, as a result of bipolar disorder and schizophrenia. (R. 279). [2] Plaintiff's application was denied on October 6, 2014 (R. 151), and upon Plaintiff's timely request, on June 23, 2017, a hearing was held in Buffalo, New York before administrative law judge Mary Mattimore ("the ALJ"). (R. 90-137). Appearing and testifying at the hearing were Plaintiff, legal counsel Kenneth Hiller, Esq ("Hiller"), and vocational expert Dawn Blythe ("the VE").

---

[2] "R" references are to the page of the Administrative Record electronically filed by Defendant on September 19, 2018 (Dkt. No. 8).

On October 2, 2017, the ALJ issued a decision denying Plaintiff's claim (R. 22-34) ("the ALJ's decision"), which Plaintiff appealed to the Appeals Council, with Hiller representing Plaintiff on her administrative appeal.  On July 27, 2017, Plaintiff's counsel sent additional medical evidence to the ALJ that the ALJ included in the record.  (R. 39-81).  On February 14, 2018, the Appeals Council issued a decision denying Plaintiff's request for review, rendering the ALJ's decision the Commissioner's final decision.  (R. 1-4).  On April 13, 2018, Plaintiff commenced the instant action seeking judicial review of the ALJ's decision.

On November 19, 2018, Plaintiff filed a motion for judgment on the pleadings (Dkt. No. 10) ("Plaintiffs' Motion"), attaching the Memorandum of Law in Support of Plaintiff's Motion for Judgment on the Pleadings (Dkt. No. 10-1) ("Plaintiff's Memorandum").  On January 29, 2019, Defendant filed a motion for judgment on the pleadings (Dkt. No. 12) ("Defendant's Motion"), attaching a Memorandum in Support and in Response to Plaintiff's Brief Pursuant to Local Standing Order on Social Security Cases (Dkt. No. 12-1) ("Defendant's Memorandum").  In further support of Plaintiff's Motion, Plaintiff filed on February 19, 2019, Plaintiff's Response to the Defendant's Motion (Dkt. No. 13) ("Plaintiff's Reply").  Oral argument was deemed unnecessary.

Based on the following, Plaintiff's Motion is DENIED; Defendant's Motion is GRANTED.  The Clerk of Court is ordered to close the file.

## **FACTS**[3]

Plaintiff Jessie Ackroyd ("Plaintiff" or "Ackroyd"), was born on March 16, 1984 (R. 238), was 26 years old as of Plaintiff's alleged disability onset date on December 30, 2010, graduated from high school and completed two years of college (R. 97), and lives with her nine year-old daughter. (R. 98).

## **DISCUSSION**

### **1.  Standard and Scope of Judicial Review**

A claimant is "disabled" within the meaning of the Act and entitled to disability benefits when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 416(i)(1); 1382c(a)(3)(A). A district court may set aside the Commissioner's determination that a claimant is not disabled if the factual findings are not supported by substantial evidence, or if the decision is based on legal error. 42 U.S.C. §§ 405(g), 1383(c)(3); *Green-Younger v. Barnhart*, 335 F.3d 99, 105-06 (2d Cir. 2003). In reviewing a final decision of the SSA, a district court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotation marks and citation omitted). "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* It is not, however, the district court's function to make a *de novo* determination as to whether the claimant is disabled; rather,

---

[3] In the interest of judicial economy, recitation of the Facts is limited to only those facts necessary for determining the pending motions for judgment on the pleadings.

"the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn" to determine whether the SSA's findings are supported by substantial evidence. *Id.* "Congress has instructed . . . that the factual findings of the Secretary,[4] if supported by substantial evidence, shall be conclusive." *Rutherford v. Schweiker*, 685 F.2d60, 62 (2d Cir. 1982).

**2.     Disability Determination**

The applicable regulations set forth a five-step analysis the Commissioner must follow in determining eligibility for disability benefits. 20 C.F.R. §§ 404.1520 and 416.920. *See Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986); *Berry v. Schweiker*, 675 F.2d 464 (2d Cir. 1982). If the claimant meets the criteria at any of the five steps, the inquiry ceases and the claimant is not eligible for disability benefits. 20 C.F.R. §§ 404.1520 and 416.920. The first step is to determine whether the applicant is engaged in substantial gainful activity during the period for which the benefits are claimed. 20 C.F.R. §§ 404.1520(b) and 416.920(b). The second step is whether the applicant has a severe impairment which significantly limits the physical or mental ability to do basic work activities, as defined in the relevant regulations. 20 C.F.R. §§ 404.1520(c) and 416.920(c). Third, if there is an impairment and the impairment, or its equivalent, is listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the regulations ("Appendix 1" or "the Listings"), and meets the duration requirement,[5] there is a presumption of inability to perform substantial gainful activity, and the claimant is deemed disabled, regardless

---

[4] Pursuant to the Social Security Independence and Program Improvements Act of 1994, the function of the Secretary of Health and Human Services in Social Security cases was transferred to the Commissioner of Social Security, effective March 31, 1995.
[5] The duration requirement mandates the impairment must last or be expected to last for at least a continuous twelve-month period. 20 C.F.R. §§ 404.1509 and 416.909.

of age, education, or work experience. 42 U.S.C. §§ 423(d)(1)(A) and 1382a(c)(3)(A); 20 C.F.R. §§ 404.1520(d) and 416.920(d). As a fourth step, however, if the impairment or its equivalent is not listed in Appendix 1, the Commissioner must then consider the applicant's "residual functional capacity," which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding the limitations posed by the applicant's collective impairments, *see* 20 C.F.R. 404.1520(e)-(f), and 416.920(e)-(f), and the demands of any past relevant work ("PRW"). 20 C.F.R. §§ 404.1520(e) and 416.920(e). If the applicant remains capable of performing PRW, disability benefits will be denied, *id.*, but if the applicant is unable to perform PRW relevant work, the Commissioner, at the fifth step, must consider whether, given the applicant's age, education, and past work experience, the applicant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy." *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks and citation omitted); 20 C.F.R. §§ 404.1560(c) and 416.960(c). The burden of proof is on the applicant for the first four steps, with the Commissioner bearing the burden of proof on the final step. 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4); *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008).

In the instant case, the ALJ found that Plaintiff did not engage in substantial gainful activity since December 30, 2010 (R. 17), and suffers from the severe impairments of bipolar disorder, Cluster B traits,[6] anxiety, generalized anxiety disorder, chronic pain syndrome, vertebral subluxation complex,[7] and cervical intervertebral disc

---

[6] Cluster B traits are characterized by dramatic, overly emotional or unpredictable thinking and include anti-social personality disorder, borderline personality disorder, histrionic personality disorder, and narcissistic personality disorder.
[7] Vertebral subluxation is misalignment of an individual's spinal column.

6

displacement. (R. 17). The ALJ further determined that Plaintiff's impairments or combination of impairments do not meet or medically equal the severity of any impairment in the Listings in Appendix 1, and that Plaintiff retained the residual functional capacity to perform light work with limitations to occasionally stooping, pushing and pulling bilaterally, low stress work defined as able to understand, remember, and carrying out simple, routine instructions, with no production pace work meaning assembly line rate pace, only occasional interaction with supervisors, coworkers, and the general public, and no tandem or team work with coworkers. (R. 21). The ALJ concluded that Plaintiff was unable to perform any past relevant work, and thus has no transferable job skills, but given her age of 26, her education, and ability to communicate in English, and residual functional capacity for light work, is capable of performing work existing in significant numbers in the national economy including work as a housekeeping cleaner, mail clerk, and photocopy machine operator and, as such, is not disabled as defined under the Act. (R. 18-30). Plaintiff does not contest the ALJ's findings with regard to the first, second, and third steps of the five-step analysis, but argues that at step four, the ALJ improperly evaluated Plaintiff's residual functional capacity.

N.P. Kendra's Opinion

In this case, the ALJ afforded partial weight to N.P. Kendra's finding that Plaintiff would be absent from work two days each month as such finding was inconsistent with the overall record, the findings of Horacio Capote, M.D. ("Dr. Capote"), and Plaintiff's treating psychiatrist Wendy Weinstein, M.D. ("Dr. Weinstein"), and in light of N.P. Kendra's limited treatment of Plaintiff. (R. 28). Plaintiff contends that the ALJ erred by

7

affording partial weight to N.P. Kendra's opinion that Plaintiff's mental impairments would result in Plaintiff missing two days of work each month as N.P. Kendra provided the only functional assessment in the record, and that the ALJ's substitution of the ALJ's opinion without support of a treating physician opinion results in a gap in the record. Plaintiff's Memorandum at 18-22.  Defendant maintains that the ALJ properly afforded partial weight to N.P. Kendra's opinion as the weight afforded to nurse practitioners as "other sources" is subject to the ALJ's discretion, and the ALJ's residual functional capacity assessment of Plaintiff is supported by substantial evidence in the record. Defendant's Memorandum at 23-28.  The ALJ's determination that N.P. Kendra's opinion that Plaintiff would miss two days of work each month is inconsistent with the record (R. 28), is supported by substantial evidence.

In particular, Dr. Weinstein first provided treatment to Plaintiff on November 8, 2011 (R. 385), and provided medication management and counseling to Plaintiff on January 12, 2012 (R. 384), February 28, 2012 (R. 383), April 12, 2012 (R. 382), June 6, 2012 (R. 381), July 25, 2012 (R. 379), September 19, 2012 (R. 378), November 21, 2012 (R. 377), March 6, 2013 (R. 375), and May 15, 2013 (R. 374).  On June 24, 2013, Dr. Weinstein noted that Plaintiff reported she decreased her Lamictal (bipolar) dosage in response to Plaintiff's primary physician advising that Lamictal resulted in weight gain, and that Plaintiff's voluntary reduction in her Klonopin (panic attack), medication resulted in obsessive thoughts about harming people and increased anxiety.  (R. 310). Dr. Weinstein noted that although Plaintiff was tearful, despondent and overwhelmed, she exhibited goal directed thought processes, fair insight and judgment, and no lethality or psychosis.  (R. 310).  On August 6, 2013, Dr. Weinstein noted that Plaintiff

exhibited a restricted affect (mood), fair insight and judgment, with no psychosis, was cooperative with goal directed thoughts, and reported good concentration and sleep habits. (R. 309). During a visit with Dr. Weinstein on September 18, 2013, Plaintiff reported she felt "awful" and was unable to stop crying. Dr. Weinstein noted that Plaintiff was anxious, overwhelmed, despondent and dysphoric, and prescribed Cymbalta (depression). (R. 370). On December 13, 2013, Dr. Weinstein noted that Plaintiff had two visits to the emergency room after suffering a panic attack from Klonopin withdrawal. Dr. Weinstein evaluated Plaintiff as pleasant and cooperative, with constricted affect, clear and coherent speech, goal directed thought processes, fair insight and judgment, no lethality or psychosis. (R. 368). On April 8, 2014, Dr. Weinstein noted that Plaintiff was pleasant and cooperative, with bright affect, clear and coherent speech, fair insight and judgment, with goal directed thought processes. (R. 367). On May 9, 2014, Dr. Weinstein noted that Plaintiff was pleasant and cooperative, with a bright affect, goal directed thought processes, fair insight and judgment, with no lethality or psychosis. (R. 366). In short, nothing in Dr. Weinstein's treatment records supports Plaintiff would miss two days of work each month.

On September 23, 2014, Dr. Capote completed a consultative psychiatric evaluation of Plaintiff at the request of Dr. Weinstein, where Plaintiff was evaluated as pleasant and cooperative, with clear and coherent speech, goal directed thoughts, somewhat restricted affect, grossly intact memory and fund of knowledge, no evidence of delusions of hallucinations, diminished concentration, fair insight and judgment, and discontinued Plaintiff's Ambien (sleep) medication. (R. 601-02). On November 7, 2014, Dr. Capote completed a follow-up examination on Plaintiff, noted that Plaintiff was

9

cantankerous because she wanted to be evaluated only once each year, and that Plaintiff reported that her mood and anxiety were "fine." (R. 596-97). On May 11, 2015, Dr. Capote noted that Plaintiff reported things were "going well," with stable anxiety, and that her medications were controlling her anxiety and depression. (R. 593-94). Accordingly, Dr. Capote's records also fail to support that Plaintiff would miss two days of work each month.

On April 5, 2017, N.P. Kendra provided psychotherapy treatment to Plaintiff, noted that Plaintiff was seeking treatment for cocaine use disorder in remission, and reported that her mood was fairly stable without mood swings on a reduced dosage of Klonopin. (R. 659). On May 10, 2017, N.P. Kendra noted that Plaintiff wanted to stop taking Klonopin as Plaintiff wished to become pregnant. (R. 668). In accordance with the foregoing, nothing on this record, including N.P. Kendra's own treatment notes support N.P. Kendra's opinion that Plaintiff's anxiety would result in missing at least two days of work each month. The ALJ's decision to afford partial weight to N.P. Kendra's finding on the issue of Plaintiff's ability to work is therefore supported by substantial evidence in the record. Plaintiff's motion on this issue is therefore DENIED.

Insofar as Plaintiff alleges that the ALJ erred by not including the effects of Plaintiff's stress, chronic pain, limited movement and fatigue, Plaintiff's Memorandum at 22, the ALJ found Plaintiff's chronic pain syndrome to be severe (R. 17), and limited Plaintiff to light work[8] which contemplates Plaintiff's physical limitations and includes additional limitations to occasional stooping, pushing, pulling. (R. 21). Accordingly, Plaintiff's contention on this issue is without merit.

---

[8] Light work includes sitting up to two hours and walking up to six hours each day, occasionally lifting up to 20 pounds and frequent lifting of up to 10 pounds. *See* 20 C.F.R. § 404.1567(b).

## **CONCLUSION**

Based on the foregoing, Plaintiff's Motion (Dkt. No. 10) is DENIED; Defendant's Motion (Dkt. No. 12) is GRANTED.  The Clerk of Court is ordered to close the file.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE


DATED:	September 17, 2019
	Buffalo, New York